**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**CASE NO.  5:23-cv-00714-JSM-PRL**

**WILLIAM DIAZ,**

      **Plaintiff,**

**v.**

**DREAM WORK SERVICES, LLC,**

      **Defendant.**

_____/

**JOINT STIPULATED MOTION TO APPROVE SETTLEMENT**
**AGREEMENT AND FOR DISMISSAL WITH PREJUDICE**
**AND MEMORANDUM OF LAW**

Plaintiff, William Diaz ("Plaintiff"), and Defendant, Dream Work Services, LLC ("Defendant"), by and through their undersigned counsel, hereby submit this Joint Stipulated Motion to Approve Settlement Agreement and For Dismissal with Prejudice and Memorandum of Law (the "Motion"). Since Plaintiff is releasing claims which arise under the Fair Labor Standards Act ("FLSA"), the Parties are seeking approval of the settlement by this Court. In support of this Motion, the Parties stipulate and agree as follows:

1.      On December 11, 2023, Plaintiff filed this action alleging that he was not paid overtime he was due in accordance with the FLSA and was terminated by Defendant in retaliation for his alleged objections to Defendant's pay practices.

2.     In this action, the Parties have a bona fide dispute as to multiple issues, including whether Plaintiff was actually entitled to overtime; the number of hours actually worked by Plaintiff; whether Defendant's alleged violations were willful; whether any overtime and/or liquidated damages are owed; and whether Plaintiff was terminated by Defendant in retaliation for his objections to Defendant's pay practices.

3.     In order to avoid the expense and uncertainty of further litigation, the Parties have agreed to settle this matter for the following amounts: (a) $8,750.00 in settlement of Plaintiff's alleged unpaid overtime, and (b) $8,750.00 in settlement of Plaintiff's alleged liquidated damages. Additionally, Plaintiff has agreed to provide a full general release (excluding Plaintiff's unpaid overtime and liquidated damages claims) in exchange for $1,000.00, which was negotiated separate from, and without regard to, the amount being paid to Plaintiff for his overtime and liquidated damages under the FLSA.  In addition, Defendant has agreed to pay Plaintiff's alleged attorneys' fees and costs totaling $16,500.00, which was negotiated separate from, and without regard to, the amount Plaintiff is recovering.

4.     A true and correct copy of the Parties' Settlement Agreement ("Agreement") is attached hereto as **Exhibit 1**. There are no other agreements between the Parties.

5.     The Parties, through their undersigned counsel, stipulate to the Court that the Agreement is fair and equitable, in compliance with applicable law, and is in the Parties' best interest.

## MEMORANDUM OF LAW

Settling parties routinely seek judicial approval of a proposed settlement to ensure fairness and to give effect to the FLSA releases.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (stating that claims for back wages arising under the FLSA may be settled or compromised only with the approval of the Court or the Secretary of Labor).  If the parties' settlement reflects a reasonable compromise of disputed issues such as an employee's exempt status or the computation of the alleged overtime or liquidated damages due, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id*. at 1354.

The Parties' settlement of Plaintiff's FLSA claim results from a *bona fide* compromise between them on various disputes of law and fact, including without limitation: (a) the number of hours Plaintiff allegedly worked performing various tasks for Defendant each workweek; (b) whether Plaintiff worked any overtime hours; (c) whether the alleged actions of Defendant were willful; (d) whether Defendant acted in good faith; and (e) whether Defendant's reason for terminating Plaintiff's employment was retaliatory under the FLSA or whether it was based on

a legitimate nonretaliatory reason.  The Parties also resolved Plaintiff's claim of retaliatory discharge, which Defendant disputes.

The Parties represent to the Court that this settlement is fair and equitable, in compliance with the FLSA, and in the Parties' best interests. The settlement arises out of an adversarial context with all parties having been represented by counsel, so there is little to no risk of fraud or collusion. Absent fraud and collusion, the Court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel." *Diaz v. Hillsborough County Hosp. Auth.,* No. 90 Civ. 120, 2000 U.S. Dist. LEXIS 14061, at *4 (M.D. Fla. Aug. 7, 2000) (internal citation and quotation marks omitted).

As discussed above, Defendant disputes whether any liability exists in the instant action.  Nonetheless, the Parties have agreed to settle all claims in this dispute through the execution of a Settlement Agreement, because the Parties agree that if they had continued to litigate this matter, they would have faced uncertain risk and unavoidable fees and costs to prove their claims and defenses at summary judgment and/or at trial. Further, approval of the settlement is supported by the complexity, expense and duration of potential litigation. Plaintiff's claims involve disputed issues, including whether Plaintiff was actually entitled to overtime; the number of hours actually worked by Plaintiff; whether Defendant's alleged violations were willful; whether any overtime and/or liquidated damages are owed; and whether

Plaintiff was terminated by Defendant in retaliation for his objections to Defendant's pay practices. If Plaintiff had proceeded to trial, a jury could have determined that he was not entitled to any overtime or liquidated damages or that he was not terminated in retaliation. If the settlement is not approved, the Parties will be forced to engage in additional and costly litigation on these matters. The Parties have agreed that this settlement is in their best interests to minimize future risk and the expense of such litigation.

Plaintiff's attorney's fees and costs were negotiated separately from the amounts claimed by Plaintiff for his underlying claims. Thus, the recovery by Plaintiff was not adversely affected by the amount of the attorney's fees and costs paid to his counsel. As the Court explained in *Bonetti v. Embarq Mgmt. Co.*, 2009 U.S. Dist. LEXIS 68075 at *11-12 (M.D. Fla. Aug. 4, 2009), where a "plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Bonetti*, 2009 U.S. Dist. LEXIS 68075 at *15-16. *Furie v. Expel, LLC,* No. 3:19-CV-117-J-32PDB, 2019 U.S. Dist. LEXIS 235560, at *11 (M.D. Fla. Sep. 17, 2019) (following *Bonetti*, as the fees were separately negotiated, the court declared it

unnecessary to conduct a lodestar review); *Texas v. New World Van Lines of Fla.*, No. 6:20-cv-445-RBD-LRH, 2021 U.S. Dist. LEXIS 110172, at *7-8 (M.D. Fla. June 10, 2021) (accepting the representations of the attorneys that the fees were separately negotiated, the Court accepts and approves the fees to be paid without further scrutiny).

The settlement negotiated and reached by the Parties reflects a reasonable compromise of the disputed issues. All Parties were counseled and represented by their attorneys through the litigation and settlement process. The Agreement has been signed by the Parties.

As to the general release, the limited confidentiality provision, and the neutral reference, these terms are permissible in this lawsuit. Plaintiff's suit is not limited to a claim for unpaid overtime, but also includes a count for retaliation. It is this count that permits the use of a general release of all claims, beyond wage claims. Further, Defendant has paid Plaintiff consideration for the general release. Further, Defendant has agreed to provide a neutral reference if one is requested on behalf of Plaintiff. For these reasons, the Parties agree that these provisions are fair and reasonable under the circumstances.

**WHEREFORE**, for the reasons set forth herein, Plaintiff, William Diaz, and Defendant, Dream Works Services, LLC, respectfully request this Court grant the Parties' Joint Stipulated Motion to Approve Settlement Agreement and For

Dismissal with Prejudice and Memorandum of Law and enter an Order dismissing this case with prejudice.

| **RICHARD CELLER LEGAL, P.A.** | **SHUMAKER, LOOP & KENDRICK, LLP** |
|---|---|
| By:  */s/ Noah E. Storch, Esq.* | By:  */s/ W. Jan Pietruszka* |
| NOAH E. STORCH, ESQ. | W. JAN PIETRUSZKA, ESQ. |
| Florida Bar No. 0085476 | Florida Bar No. 188794 |
| noah@floridaovertimelawyer.com | jpietruszka@shumaker.com |
| 10368 W. State Rd 84, Suite 103 | 101 East Kennedy Boulevard, Suite 2800 |
| Davie, Florida 33324 | Tampa, Florida 33602 |
| Telephone:  (866) 344-9243 | Phone:  (813) 229-7600 |
| Facsimile:  (954) 337-2771 | Fax:  (813) 229-1660 |
| *Attorney for Plaintiff* | *Attorney for Defendant* |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 14, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record.

*/s/ W. Jan Pietruszka*
**ATTORNEY**

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

### CASE NO. 5:23-cv-00714-JSM-PRL

**WILLIAM DIAZ,**

      **Plaintiff,**

**v.**

**DREAM WORK SERVICES, LLC,**

      **Defendant.**

_____/

### SETTLEMENT AGREEMENT
### AND GENERAL RELEASE

      This **SETTLEMENT AGREEMENT AND GENERAL RELEASE** (the "Agreement") is entered into by and between William Diaz, on behalf of himself, his heirs, executors, administrators and assigns (collectively, "Diaz"); and Dream Work Services, LLC ("Defendant").

      **WHEREAS,** Diaz filed the above-styled lawsuit against Defendant (the "Litigation");

      **WHEREAS,** there exists a bona fide dispute between Diaz and Defendant (collectively, the "Parties") regarding whether Diaz was actually entitled to overtime; the number of hours actually worked by Diaz; whether Defendant's alleged violations were willful; whether any overtime and/or liquidated damages are owed; and whether Diaz was terminated by Defendant in retaliation for his alleged objections to Defendant's pay practices; and

      **WHEREAS,** the Parties desire to fully and completely resolve and settle any and all claims known and unknown, which Diaz had, has or may have against Defendant, including but not limited to the claims in the Litigation.

The signed document can be validated at https://app.vinesign.com/Verify

**NOW THEREFORE,** in consideration of the promises and mutual covenants herein contained, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      The above recitals are true and correct and are incorporated herein by reference.

2.      The terms of this Agreement are contingent upon its approval by the Court and the entrance of an Order of Dismissal With Prejudice in the Litigation. Diaz and his counsel agree to cooperate with counsel for Defendant and take all actions necessary to obtain approval of this Agreement and dismissal of the Litigation with prejudice, including but not limited to jointly filing a Joint Stipulated Motion to Approve Settlement Agreement and For Dismissal with Prejudice and Memorandum of Law.

3.      Diaz shall execute and deliver to Defendant's counsel this Agreement, a completed W-4 and W-9 for himself, and a completed W-9 for Richard Celler Legal, P.A.

4.      Defendant shall deliver to Diaz's counsel a total of $35,000.00 in full settlement of all claims, broken down as follows:

    (a)     $8,750.00 payable to Diaz, minus applicable taxes and withholdings, in settlement of Diaz's alleged unpaid overtime;

    (b)     $8,750.00 payable to Diaz in settlement of Diaz's claim for liquidated damages;

    (c)     $16,500.00 payable to the Richard Celler Legal, P.A. in settlement of Diaz's attorneys' fees and costs; and

    (d)     $1,000.00 payable to Diaz in consideration for the full general release set forth in Paragraph 9, excluding Diaz's claims for overtime in the Lawsuit, the confidentiality provision set forth in Paragraph 11, the non-disparagement provision in Paragraph 14 and the other covenants in this Agreement.

All settlement payments are contingent on Diaz's delivery of the W-4 and W-9s and the Court's approval of this Agreement. Following such, the full settlement amount will be paid by Defendant in two (2) installments, as follows: (i) $20,000.00 on the later of seven (7) days after the Court's entrance of an Order of Dismissal With Prejudice in the Litigation or March 6, 2024 (including Diaz's check

in Paragraph 4(a) for $8,750.00, along with $1,250.00 of the $8,750.00 payment to Diaz in Paragraph 4(b); and Richard Celler Legal's check for $10,000.00 of the $16,500.00 in Paragraph 4(c)); and (ii) $15,000.00 on the later of seven (7) days after the Court's entrance of an Order of Dismissal With Prejudice in the Litigation or March 29, 2024 (including the remaining $7,500.00 to Diaz in Paragraph 4(b), and the $1,000.00 payment to Diaz in Paragraph 4(d), as well as the remaining $6,500.00 owed to Richard Celler Legal in Paragraph 4(c).

5.    The Parties agree that the amounts paid to Diaz pursuant to Paragraph 4(a) will be treated as wages, with applicable taxes and withholdings deducted and a W-2 issued to Diaz. The Parties agree and understand that the amounts paid to Diaz pursuant to Paragraphs 4(b) and (d), and to Richard Celler Legal, P.A. pursuant to Paragraph 4(c), will be subject to 1099 reporting. Diaz agrees that he is responsible for the payment of any and all taxes that may be owed by him in connection with his claims against Defendant and for payment of any and all federal, state and local taxes which may be due by virtue of this Agreement. Diaz agrees to hold harmless and indemnify Defendant should there be any resulting liability for failure to pay any and all taxes which may be owed by Diaz.

6.    Diaz represents and warrants to Defendant that he has not filed any lawsuit(s), complaint(s) or initiated any other legal action(s) against Defendant except the Litigation and that he has no pending charge(s), lawsuit(s) or any other legal action(s) against Defendant except the Litigation. Diaz shall dismiss, withdraw or cause to be withdrawn any other lawsuit, complaint or other legal action against Defendant within five (5) days of Defendant's delivery of the settlement funds.

7.    Diaz agrees that he has now been paid and/or has received all leave (paid or unpaid), compensation, wages, minimum wage, overtime, bonuses, commissions and/or benefits to which

he may be entitled and that no other leave (paid or unpaid), compensation, wages, minimum wage, overtime, bonuses, commissions and/or benefits are due to him, except as provided for in this Agreement. Diaz further affirms that he has no known workplace injuries or occupational disease.

8.      Diaz hereby waives and releases all claims he may have against Defendant under the FLSA or the laws of the State of Florida for unpaid wages, minimum wage, overtime, liquidated damages, and retaliation.

9.      (a)      Diaz, individually, and on behalf of, as applicable, Diaz's current, former, and successor agents, representatives, guardians, heirs, assigns, successors, executors and administrators does hereby irrevocably release, acquit, and discharge Defendant and the Other Released Parties (as defined below), from any and all Claims and Controversies (as defined below); *provided, however,* that nothing in this Agreement will be considered a release of Diaz's claims, if any, for Diaz's right to enforce this Agreement.

(b)      For the purposes of this Agreement, the term "Other Released Parties" means, as applicable, Jedidiah Randall, Kris Epling, and Defendant's insurers

(c)      For the purposes of this Agreement, the term "Claims and Controversies" means any and all claims, debts, damages, demands, liabilities, benefits, suits in equity, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, remedies, attorneys' fees and expenses, back pay, front pay, severance pay, percentage recovery, injunctive relief, lost profits, emotional distress, mental anguish, personal injuries, liquidated damages, punitive damages, disability benefits, interest, expert fees and expenses, reinstatement, other compensation, suits, appeals, actions, and causes of action, of whatever kind or character, including without limitation, any dispute, claim, charge, or cause of action arising under the Civil Rights Act of 1964, Title VII (including the Civil Rights Act of 1991); the Civil Rights Act of

1866, 42 U.S.C. §§ 1981; the Equal Pay Act of 1963; the Age Discrimination in Employment Act of 1967; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973; the Employee Retirement Income Security Act; the Consolidated Budget and Reconciliation Act of 1985; the Fair Labor Standards Act; the Family and Medical Leave Act; the Labor Management Relations Act; the Employee Polygraph Protection Act; the Racketeer Influenced and Corrupt Organizations Act; the Occupational Safety and Health Act; the Electronic Communications Privacy Act; the Uniform Services Employment and Re-Employment Rights Act; the Sarbanes-Oxley Act; the Fair Credit Reporting Act; the Florida Civil Rights Act; the Genetic Information Non-Discrimination Act; Florida's Minimum Wage Act; the Florida Whistleblower's Act; the Families First Coronavirus Response Act; all other applicable state and federal fair employment laws, state and federal equal employment opportunity laws, and state and federal labor statutes and regulations, and all other constitutional, federal, state, local, and municipal law claims, whether statutory, regulatory, common law (including without limitation, breach of employment agreement, other breach of express or implied contract, wrongful discharge in violation of public policy, workers' compensation retaliation, breach of covenant of good faith and fair dealing, promissory estoppel, quantum meruit, fraud, fraud in the inducement, fraud in the factum, statutory fraud, negligent misrepresentation, defamation, libel, slander, slander per se, retaliation, tortuous interference with prospective contract, tortuous interference with business relationship, tortuous interference with contract, invasion of privacy, intentional infliction of emotional distress, and any other common law theory of recovery, whether legal or equitable, negligent or intentional), or otherwise, whether known or unknown to the Parties, foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, directly or indirectly arising out of or relating to any and all disputes now existing between Diaz and Defendant or the Other Released Parties, whether related to or in

any way growing out of, resulting from or to result from Diaz's employment with Defendant, for or because of any matter or thing done, omitted, or allowed to be done by Defendant or the Other Released Parties, as applicable, for any incidents, including those past and present, which existed or may have existed at any time prior to and/or contemporaneously with the execution of this Agreement, including all past, present, and future damages, injuries, costs, expenses, attorney's fees, other fees, effects and results in any way related to or connected with such incidents.

(d)    Diaz understands that he is releasing Claims and Controversies of which Diaz may not be aware. This is Diaz's knowing and voluntary intent, even though Diaz recognizes that someday Diaz might learn that some or all of the facts that Diaz currently believes to be true are untrue and even though Diaz might then regret having signed this Agreement. Nevertheless, Diaz is assuming that risk and Diaz agrees that this Agreement shall remain effective in all respects in any such case. It is further understood and agreed that Diaz is waiving all rights under any statute or common law principle which otherwise limits application of a general release to claims which the releasing party does not know or suspect to exist in his favor at the time of signing the release which, if known by him, would have materially affected his settlement with the party being released and Diaz understands the significance of doing so. Diaz is not waiving any rights he may have to benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; to pursue claims which by law cannot be waived by signing this Agreement; and/or to enforce this Agreement.

10.    Defendant hereby irrevocably releases, acquits and discharges Diaz, from any and all claims, debts, damages, demands, liabilities, suits in equity, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, remedies, attorneys' fees and expenses, injunctive relief, lost profits, emotional distress, mental anguish, personal injuries,

Page **6** of **11**

liquidated damages, punitive damages, interest, expert fees and expenses, suits, appeals, actions, and causes of action, of whatever kind or character, including without limitation, any dispute, claim, charge, or cause of action arising under any constitutional, federal, state, local, and municipal law claims, whether statutory, regulatory, common law, breach of employment agreement, breach of covenant of good faith and fair dealing, promissory estoppel, quantum meruit, fraud, fraud in the inducement, fraud in the factum, statutory fraud, negligent misrepresentation, defamation, libel, slander, slander per se, tortious interference with prospective contract, tortious interference with business relationship, tortious interference with contract, invasion of privacy, intentional infliction of emotional distress, and any other common law theory of recovery, whether legal or equitable, negligent or intentional, known or unknown to the Parties, or otherwise, whether foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, directly or indirectly arising out of or relating to Diaz's employment with Defendant, any and all disputes now existing between Diaz on the one hand, and Defendant on the other hand, or any other matter whatsoever, for or because of any matter or thing done, omitted, or allowed to be done by Diaz, as applicable, for any incidents, including those past and present, which existed or may have existed at any time prior to and/or contemporaneously with the execution of this Agreement, including all past, present, and future damages, injuries, costs, expenses, attorney's fees, other fees, effects and results in any way related to or connected with such incidents; provided however nothing in this Agreement will be considered a release of Defendant's claims, if any, for its right to enforce this Agreement.

Defendant understands that it is releasing claims of which it may not be aware. This is its knowing and voluntary intent, even though it recognizes that someday it might learn that some or all of the facts that it currently believes to be true are untrue and even though it might then regret

having signed this Agreement. Nevertheless, Defendant is assuming that risk and agrees that this Agreement shall remain effective in all respects in any such case. It is further understood and agreed that Defendant is waiving all rights under any statute or common law principle which otherwise limits application of a general release to claims which the releasing party does not know or suspect to exist in their favor at the time of signing the release which, if known by them would have materially affected their settlement with the parties being released and Defendant understands the significance of doing so.

11.    Except in conjunction with the Court's record/docket and approval of this Agreement and/or otherwise required by law, Diaz agrees to keep confidential the financial terms of this Agreement and will not disclose the financial terms of this Agreement to anyone other than his spouse and professional representatives, who will be informed of and agree to be bound by this confidentiality provision. If specifically asked about his claims against Defendant, Diaz shall state "the matter was resolved" and nothing more. In the event that Diaz is compelled by enforceable legal subpoena or court order to provide information covered by this confidentiality section, Diaz agrees to provide Defendant at least seven (7) days written notice of the event at which the disclosure is expected.

12.    Diaz hereby waives any and all rights he has, had or may have against Defendant for reinstatement to his former or equivalent job, or to any other position with Defendant for any reason. Diaz agrees not to apply for employment or any other engagement with Defendant. Diaz agrees that Defendant's refusal to hire him will not subject Defendant to any liability on any grounds.

13.    Except as provided for in this Agreement, Diaz agrees to waive the right to seek payment of attorneys' fees or costs relating to the Litigation.

14.     Diaz represents and warrants that he is authorized to enter into and has the authority to perform the terms of this Agreement and that he has not sold, assigned, transferred, conveyed or otherwise disposed of all or any portion of the Released Claims.

15.     The Parties agree that there are good faith, bona fide disputes between Diaz and Defendant, including but not limited to whether Diaz is owed any overtime or liquidated damages. This Agreement is the result of a compromise of disputed claims, and it is understood that the execution and performance of this Agreement by Defendant does not constitute, nor shall it be construed as, an admission that Defendant violated any law, statute, rule, regulation or ordinance of either the United States or the State of Florida or breached any duty owed to Diaz or any other employee under federal, state or local law, policy or practice, with respect to their employment, or in any other matter, or that any of Diaz's claims have any merit whatsoever. Defendant explicitly denies any such wrongdoing.

16.     If any provision of this Agreement or the application thereof to any party or circumstances shall be determined to be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to any other party or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

17.     Diaz agrees that his breach of any of the covenants in Paragraph 11 of this Agreement will be a material breach and is likely to result in immediate and irreparable harm, directly or indirectly, to Defendant, therefore, Diaz consents and agrees that if he violates Paragraph 11, Defendant shall be entitled, among and in addition to any other rights or remedies available under this Agreement or at law or in equity, to temporary and permanent injunctive relief, to prevent Diaz from committing or continuing a breach of such covenants.

18.     **Neutral Reference.**  In the event Defendant is contacted by a prospective employer of Diaz for a reference, Defendant shall provide only Diaz's dates of employment and position held.  No comment(s) shall be made, expressly or impliedly regarding Diaz's termination and/or eligibility for rehire.

19.     This Agreement shall be construed and governed in accordance with the laws of the State of Florida.  **In the event any litigation arising out of or relating to this Agreement or Diaz's employment with Defendant is commenced, then all issues of law and fact shall be determined by the Court and any and all right to a jury trial is expressly waived by the Parties.** In the event that Diaz or Defendant commence an action for damages, injunctive relief, or to enforce the provisions of the Agreement, the prevailing party in any such action shall be entitled to an award of its/his reasonable attorneys' fees and all costs, including appellate fees and costs, incurred in connection therewith as determined by the court in any such action.

20.     The Parties hereto agree that this Agreement constitutes the entire agreement between them relating to any matters covered by this Agreement or any other matter whatsoever. This Agreement supersedes and replaces all prior agreements and understandings regarding Diaz's compensation and the settlement of claims between the parties.

21.     This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

22.     This Agreement is binding on Diaz and his respective heirs, successors and assigns.

23.     Except as expressly provided herein, the Parties represent and warrant that in executing this Agreement, they do not rely upon and have not relied upon any oral or written

representation, promise, warranty or understanding made by any of the Parties or their representatives with regard to the subject matter, basis or effect of this Agreement.

24.     The Parties acknowledge that each party has had an opportunity to participate in the drafting of this Agreement.  No ambiguity shall be construed against any party based upon a claim that the party drafted the ambiguous language.

25.     The Parties acknowledge and assume the risk that facts, additional and different or contrary to the facts which they believe to exist, may now exist or may be discovered after this Agreement has been entered, and the Parties agree that any such additional, different or contrary facts shall in no way limit, waive, affect or alter this Agreement.

26.     Each party to this Agreement acknowledges and represents that he or it (a) has fully and carefully read this Agreement prior to signing it, (b) has been, or has had the opportunity to be, advised by independent legal counsel of his or its own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement, and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement.

Dated: _____03/14/2024_____     _____
                                WILLIAM DIAZ

                                Address:_____
                                _____

Dated: 3/14/2024          DREAM WORK SERVICES, LLC
                                By:_____
                                Its:_____

Page **11** of **11**